UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:
    Shao Ke,
                           Debtor.

Case No. 09-32272-5
Chapter 7

Jianrong Wang,

                           Plaintiff,                 Adv. Proc. No. 09-50132-5
v.

    Shao Ke,

                           Defendant.

Appearances:

The Crossmore Law Office                        Edward Y. Crossmore, Esq.
Attorneys for Jianrong Wang
115 West Green Street
Ithaca, NY 14850

Edward E. Kopko, P.C.                          Edward E. Kopko, Esq.
Attorneys for Shao Ke
308 N. Tioga Street
Ithaca, NY 14850

Margaret Cangilos-Ruiz, U.S. Bankruptcy Judge

MEMORANDUM-DECISION AND ORDER
GRANTING PARTIAL SUMMARY JUDGMENT

Plaintiff Jianrong Wang ("Plaintiff") seeks declaratory relief that the pre-petition judgment debt ("Debt") owed by Defendant Shao Ke ("Defendant") for his failure to account for corporate monies be found non-dischargeable under section 523(a)(4) of the United States

1

Bankruptcy Code.[1] Plaintiff moved for summary judgment and Defendant cross-moved pursuant to Federal Rule of Bankruptcy Procedure ("Fed. R. Bankr. P.") 7056.[2] This court finds that there is no genuine dispute as to any material fact and that Plaintiff is entitled to summary judgment as a matter of law with respect to two of the three necessary findings required to hold the Debt nondischargeable under the specific provision invoked of Code § 523(a)(4) – namely, that Defendant was a fiduciary; and that the Debt arose from Defendant's misappropriation and failure to account for funds while acting as a fiduciary. However, this court finds a genuine dispute of material fact exists regarding whether Defendant acted with the requisite scienter. As such, the court denies the requested relief but grants Plaintiff partial summary judgment on the first two elements of his claim.[3] This memorandum-decision sets forth the court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 9021.

The court has core jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1), and (b)(2)(I).

---

[1] Unless otherwise indicated, all statutory references are to Title 11 of the United States Code, §§ 101-1532 (2011) ("Code" or "Bankruptcy Code").

[2] Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56 is made applicable in adversary proceedings by Fed. R. Bankr. P. 7056.

[3] The record consists of the complaint filed on November 5, 2009 ("*Compl.*"), Defendant's answer, affidavit of Edward Y. Crossmore, Esq., counsel for Plaintiff, sworn to on November 21, 2011, and attached Exhibits A – K ("*Crossmore Aff.*"), Plaintiff's statement of material facts submitted pursuant to Local Bankruptcy Rule 7056-1 ("*Stmt. of Facts*"), Plaintiff's memorandum in support of summary judgment, Defendant's unsworn declaration in opposition to Plaintiff's motion for summary judgment and in support of Defendant's cross-motion for summary judgment, executed pursuant to 28 U.S.C. § 1746 on February 3, 2012 ("*Def.'s Decl.*"), Defendant's memorandum of law in opposition to Plaintiff's motion for summary judgment and in support of Defendant's motion for summary judgment, Defendant's response to the LBR 7056-1 Statement and Counterstatement of Material Facts ("*Ctr. Stmt. of Facts*"), Plaintiff's reply memorandum of law ("*Reply*"), Defendant's record on appeal to the New York State Appellate Division for the Third Judicial Department ("*R.*"), and the memorandum and order of the Appellate Division entered October 21, 2010 ("*Appellate Decision*").

2

## FACTS

The procedural background of this action is undisputed. In 2004, Defendant incorporated Peace Foods, Inc. ("Peace Foods"), which owned and operated Peace Restaurant, a Chinese restaurant in Ithaca, New York. *Compl.* at ¶ 8 – 9. Plaintiff and Defendant were each a director and shareholder of Peace Foods, Inc. *Stmt. of Facts* at ¶ 5; *Ctr. Stmt. of Facts* at ¶ 4. Defendant managed the restaurant. *R.* 710. In 2005, Plaintiff twice petitioned the New York State Supreme Court ("Trial Court") – first for the judicial dissolution of Peace Foods[4] and, second, for an order determining that Defendant had committed theft or defalcation and compelling him to account for his official conduct as officer, director, and manager of the corporation.[5] *R.* 48. The Trial Court conducted a three-day trial on Plaintiff's petitions, as consolidated. The Trial Court found discrepancies, among other accounting irregularities, between the daily sales records and accounting reports prepared and issued by Defendant. *Crossmore Aff. Ex. A(B)*. The Trial Court then issued a decision dissolving Peace Foods and directing Defendant to account for all corporate revenues and expenses for the period of time Defendant managed the restaurant. *Crossmore Aff. Ex. A(B)*.

Pursuant to the Trial Court's decision, Defendant submitted an accounting ("Accounting"). Plaintiff objected to the Accounting on various grounds and moved for partial summary judgment. Defendant opposed the motion and cross-moved for an order determining that he was not liable for Peace Restaurant's missing funds.

---

[4] Index No. 2005-0067

[5] The complaint in this action set forth four causes of action: (i) theft or defalcation of corporate monies by Defendant; (ii) to compel an accounting, under New York Business Corporation Law § 720, by Defendant for his official conduct as an officer and director; (iii) for removal of Defendant as director and officer of Peace Foods, Inc.; and (iv) for cancellation of stock certificates issued to Guoqiang Long and Runwen Li. (Index No. 2005-0823).

The Trial Court granted Plaintiff summary judgment, sustaining Plaintiff's objection that $11,411.37 in payments to Defendant's personal attorney were misappropriated. *Crossmore Aff. Ex. A(C)*. As to Plaintiff's objection that identified a shortage of sales receipts, the Trial Court found that Defendant: (i) was solely responsible for the handling of all corporate revenues and disbursements; (ii) was responsible, as day-to-day manager of the restaurant, for all of the restaurant's revenues and expenses, and (iii) had failed to account for corporate revenue for the subject periods. *Id.* The Trial Court further found that Peace Restaurant's records of gross sales were inconsistent as reported divergently on its corporate income tax return, in checking account records, in the Accounting, and by the corporate accountant. *Id.* The Trial Court held that the Accounting, together with the proof at trial, demonstrated Defendant's breach of fiduciary duty to Peace Foods. The Trial Court also held that Plaintiff was entitled to reasonable attorney's fees. However, the Trial Court reserved decision on the amount of damages suffered by the corporation and reasonable attorney's fees pending a hearing. *Id.* Defendant then made a motion to renew his motion for summary judgment as to each point previously determined by the Trial Court.[6] Following a two-day trial on damages, the Trial Court reaffirmed its prior determination that Defendant was responsible for all restaurant revenue, that the restaurant was in large part a cash operation, and that it was clear that Defendant handled the cash every day ("Decision"). *Crossmore Aff. Ex. A(D)*. The Trial Court recognized that Defendant had almost exclusive control over the restaurant's cash, noting that Defendant had reiterated in his testimony that he managed Peace Restaurant throughout the period in question, that he prepared all sales

---

[6]Plaintiff also moved for an order granting leave to renew on the question of the validity of the transfer of corporate shares to Defendant, but that issue is only tangentially related to this action and will be addressed only as relevant to this Order.

4

tax reports, wrote most corporate checks, executed all corporate income tax returns, and took the cash receipts home at the end of every business day. *Id.* The Trial Court held Defendant liable and surcharged him: $11,411.37 for attorney's fees paid by the corporation to Defendant's personal attorney; $234,581.46 plus interest for failure to account for corporate profits; and $70,000.00 for reasonable attorney's fees incurred by Plaintiff.

Defendant appealed the Decision and challenged, among other findings, the Trial Court's determination that Defendant was liable for unaccounted corporate revenue in the amount of $234,581.46.[7] Defendant claimed that the Trial Court erroneously relied upon certain exhibits and expert testimony that were improperly admitted into evidence.[8] Defendant did not challenge, however, the Trial Court's finding that Defendant had a fiduciary duty to Peace Foods, nor that he should be surcharged for the accounting inaccuracies. *Appellate Decision* at 2.

On August 12, 2009, Defendant filed for relief under chapter 7 of the Code. On November 5, 2009, this adversary proceeding was commenced. The parties stipulated to relief from the automatic stay to permit the appeal of the Trial Court's Decision to be heard before the New York State Appellate Division Third Department ("Appellate Division").

On October 21, 2010, the Appellate Division rendered its decision on the appeal. The Appellate Division rejected Defendant's claim that the Trial Court had improperly admitted the

---

[7]Defendant took issue with the method of calculation used to fix the loss incurred by Peace Foods. The Trial Court calculated the surcharge by multiplying the restaurant's net profit – represented by the difference in the Defendant's reported sales and the accounted for funds – by a 30% standard profit margin. *Crossmore Aff. Ex. A(D)*. Defendant also challenged the Trial Court's determination that found Plaintiff and Peiling Xu were the sole shareholders of the corporation.

[8]Specifically, trial exhibit nos. 8, 19 and 42 and the expert testimony of Qi Wang regarding expected profit margin.

5

expert testimony. It found, however, that the Trial Court had erred in admitting two exhibits,[9] one of which the Trial Court had relied upon to calculate the surcharge. The Appellate Division excluded the information contained in the erroneously admitted exhibit, applied the Trial Court's formula to calculate the unaccounted corporate revenue, and arrived at a reduced surcharge of $177,186.72.[10] Following issuance of the Appellate Decision, Plaintiff filed his motion for summary judgment.

### STANDARD FOR SUMMARY JUDGMENT

In pertinent part, Fed. R. Civ. P. 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See Brown v. Eli Lilly & Co.*, 654 F.3d 347 (2d Cir. 2011); *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of demonstrating that no genuine issue of material fact is in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Rule further requires that a party substantiate its assertion that a fact is disputed by specific reference to materials in the record or by demonstrating that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). On summary judgment, the court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom

---

[9] The Appellate Division held that exhibit nos. 19 and 42 constituted inadmissible hearsay. The Appellate Division further held that the record did not reflect that the Trial Court had relied upon exhibit no. 8.
[10] With respect to the ownership issue, the Appellate Division ultimately credited Defendant with 50 shares, or a one-half interest in the corporation.

summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) citing *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997). Summary allegations are insufficient, however, to overcome the motion. *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002) (holding that "reliance upon conclusory statements or mere allegations is not sufficient to defeat a summary judgment motion").

## DISCUSSION

*NONDISCHARGEABILITY UNDER § 523(a)(4)*

Plaintiff argues that application of issue preclusion[11] to the Trial Court findings of fact and conclusions of law establishes that his claim is nondischargeable under Bankruptcy Code § 523(a)(4). Code § 523(a) (4) provides, in pertinent part, that a discharge "does not discharge an individual debtor from any debt . . . (4) for . . . defalcation while acting in a fiduciary capacity . . . .". Defalcation occurs where a fiduciary misappropriates or fails to account for funds through conscious misbehavior or extreme recklessness. *Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 68 (2d Cir. 2007) *cert. denied*, 129 S.Ct. 895 (2009). Thus, where a creditor establishes that: (i) debtor was a fiduciary, (ii) a debt arose from a debtor's misappropriation or failure to account

---

[11] As noted by this court in its May 11, 2012, decision in *Cricket Commc'n, Inc. v. Deb (In re Deb)* (Adv. Proc. 11-50110-5-mcr), the United States Supreme Court has adopted the use of the terms "issue preclusion" and "claim preclusion" in discussing the preclusive effect of a judgment. These preclusive effects are collectively referred to as the overarching doctrine of "res judicata." *See Taylor v. Sturgell*, 128 S. Ct. 2161 (2008). "Claim preclusion describes the rules formerly known as "merger" and "bar, while issue preclusion encompasses the doctrines once known as "collateral estoppel" and "direct estoppel." *Id.* at n. 5 citing *Migra*, 465 U.S. at 77 n. 1.

for funds while acting in his fiduciary capacity, and (iii) debtor committed the acts that gave rise to the debt through conscious misbehavior or extreme recklessness, then, the debt is nondischargeable under Code § 523(a)(4). The creditor must establish these facts by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291 (1991).

### STATUS AS A FIDUCIARY

Defendant argues that Plaintiff's complaint should be dismissed for Plaintiff's failure to allege a fiduciary duty between Defendant and Plaintiff. To the extent that Defendant's argument attacks Plaintiff's standing to bring the complaint, the court finds that Plaintiff's standing is adequate. The Debt sought to be held nondischargeable results from Plaintiff's claim under NY BCL § 720, which permits an officer or director to bring an action in his own name, *as a representative of the corporation*, against another officer or director, to compel an accounting for official misconduct. The cause of action and right of recovery belong to the corporation, and the fiduciary relationship that must be established under NY BCL § 720 is one between the defendant and the corporation. *See* NY BCL § 717(b); *Bertoni v. Catucci,* 117 A.D.2d 892, 894 (N.Y. App. Div. 3d Dep't 1986) citing *Conant v Schnall,* 33 A.D.2d 326, 328 (N.Y. App. Div. 3d Dep't 1970). Following the Trial Court's decision, Peace Foods was dissolved. Plaintiff now stands as Peace Food's representative, and any judgment here will inure to the benefit of Plaintiff.

To the extent that Defendant's argument attacks Plaintiff's complaint for failure to state a claim, the court finds that Plaintiff's complaint alleges facts sufficient to state a cause of action under Code § 523(a)(4). Defendant's argument implies that a complaint brought under Code §

8

523(a)(4) requires the establishment of a fiduciary relationship between the plaintiff and defendant. However, Code § 523(a)(4) does not explicitly specify to whom the fiduciary obligation is owed. Rather, the section requires that the debtor committed "defalcation while acting in a fiduciary capacity." It follows that the fiduciary obligation to be shown is one owed by the debtor to the creditor against which debtor committed defalcation. Here, the fiduciary relationship that Plaintiff must show is one from Defendant to Peace Foods, which Plaintiff's Complaint properly alleges.

Whether the Defendant acted in a fiduciary capacity under Bankruptcy Code § 523(a)(4) is a matter to be determined under federal, not state law. *See Zohlman v. Zoldan*, 226 B.R. 767, 772 (Bankr. S.D.N.Y. 1998). Under federal law a fiduciary relationship can arise as a result of a technical or express trust. *See Andy Warhol Found. For Visual Arts. Inc. v. Hayes (In re Hayes)*, 183 F.3d 162, (2d Cir. 1999); *Zohlman*, 226 B.R. at 773. Bankruptcy courts routinely turn to state law to determine whether a technical trust relationship exists for purposes of the Bankruptcy Code. *See e.g., In re Zohlman*, 226 B.R. at 773 – 774 (applying New York statutory and common law to determine that partners under New York law are fiduciaries for purposes of section 523(a)(4)); *Ragsdale v. Haller*, 780 F.2d 794 (9th Cir. Cal. 1986). "Generally, a technical trust is said to arise as a result of defined obligations imposed upon the debtor by statute or common law." *Zielinska v. Smith (In re Smith)*, 2012 Bankr. LEXIS 1061 (Bankr. D. Conn. 2012) citing *Allen v. Romero*, 535 F.2d 618 (10th Cir. 1976); *Nevels v.Caples (In re Caples)*, 454 B.R. 191 (Bankr. N.D. Ala. 2011). Therefore, where state law imposes defined obligations upon a debtor, thus giving rise to a technical trust, the resulting fiduciary relationship will be sufficient for purposes of Code § 523(a)(4).

New York Business Corporation Law ("NY BCL") § 717, entitled "Duty of directors" imposes defined obligations on the Defendant, in his role as a corporate director of Peace Foods. In pertinent part, it provides: "(a) A director shall perform his duties as a director, ..., in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances." NY BCL § 717(a). Defendant admits that at all relevant times he was a director of Peace Foods. The law is clear that a corporate director owes a fiduciary duty to the corporation. *Rothman v. Beeber (In re Beeber)*, 239 B.R. 13 (Bankr. E.D.N.Y. 1999) *citing Pepper v. Litton*, 308 U.S. 295 (1939). Under NY BCL § 717(a), the Defendant, as a director, was required to discharge his duties in good faith and was bound by his "duty of unqualified loyalty to [Peace Foods], a duty which encompasses good faith efforts to insure that [his] personal profit [was] not at the expense of [Peace Foods]. *Limmer v. Medallion Group, Inc.* 75 AD2d 299 (1st Dept 1980) *citing* NY BCL § 717. NY BCL § 717(a) thus imposed defined obligations upon Defendant which gave rise to a technical trust. As such, Defendant was clearly a fiduciary for purposes of establishing Plaintiff's claim under Code § 523(a)(4).

*MISAPPROPRIATION OR FAILURE TO ACCOUNT FOR FUNDS WHILE ACTING AS A FIDUCIARY*

Where a creditor's claim arose from a prior court's judgment that defendant misappropriated or failed to account for funds, successful application of issue preclusion principles may establish that the defendant misappropriated or failed to account for funds for purposes of Code § 523(a)(4) nondischargeability. Here, Plaintiff's claim arose from the Trial Court's judgment that Defendant misappropriated and failed to account for Peace Foods funds. As discussed below, issue preclusion successfully applies to establish that Defendant

misappropriated and failed to account for funds for purposes of Code § 523(a)(4) nondischargeability.

*Issue Preclusion*

As a preliminary matter, Defendant argues that the Decision was reversed and that the Trial Court's findings are, therefore, of no preclusive effect. Rather than being reversed, the Appellate Division made two discrete modifications and otherwise affirmed the Decision below. Where applicable, the doctrine of issue preclusion will prevent this court from revisiting the Trial Court's conclusions of law and findings of fact which support those conclusions.

The question here is whether issue preclusion forecloses retrying the issues of Defendant's misappropriation and failure to account for Peace Food's funds while Defendant acted in a fiduciary capacity as a director of Peace Foods. The Trial Court relied upon specific findings of fact in determining that Defendant misappropriated and failed to account for corporate funds while acting as a fiduciary. Specifically, the Trial Court made findings that (i) as a corporate director of Peace Foods, Defendant had defined fiduciary duties to Peace Foods under NY BCL § 717(a); and, (ii) Defendant breached these fiduciary duties in the manner contemplated by NY BCL § 720(a)(1)(A) and/or (B). Because the Trial Court relied upon these findings to determine that Defendant misappropriated and failed to account for Peace Food's funds while acting as a fiduciary, issue preclusion equally applies to these findings. Under New York law,[12] issue preclusion applies when: (a) the same issue was decided in the prior action and

---

[12] This court is bound by the Full Faith and Credit Act, 28 U.S.C. § 1738, to give the same preclusive effect to the Trial Court's factual and legal determinations underlying the Judgment "as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Thus, in this case, the court must look to New York law

11

is decisive in the present action; and, (b) the party opposing it had a full and fair opportunity to litigate the issue in the prior action. *In re Hyman,* 502 F.3d at 65. These factors are separately considered below.

*a. Same issue decided in the prior action is decisive in the present action*

The issues to be precluded here were decided in the Trial Court action and are decisive in the present action. Issue preclusion may still apply even where a court does not make an express finding; courts have applied issue preclusion to implicit findings of a lower court. *Rezzonica v. H&R Block, Inc.,* 182 F.3d 144 (2d Cir. 1999). Plaintiff asserts that the Trial Court implicitly found: (i) Defendant was a fiduciary and (ii) that Defendant misappropriated and failed to account for corporate funds while Defendant acted in his fiduciary capacity. This court agrees.

NY BCL § 720 permits an action to be brought by an officer or director against another officer or director to obtain a judgment compelling an accounting for official conduct in three instances, two of which are relevant here. The first involves an officer's or a director's "neglect of, or failure to perform, or other violation of his duties in the management and disposition of corporate assets committed to his charge." NY BCL § 720(a)(1)(A). The second involves an officer's or director's "acquisition by himself, transfer to others, loss or waste of corporate assets due to any neglect of, or failure to perform, or other violation of his duties. NY BCL § 720(a)(1)(B). Thus, where a court compels an accounting for official conduct under NY BCL § 720(a)(1), that court must necessarily find the defendant to be an officer or director of the corporation. As previously stated, Defendant concedes he was a director of Peace Foods.

---

to determine whether the New York state courts would preclude the Defendant from relitigating the issues necessary to the present non-dischargeability action.

Therefore, although not expressly stated by the Trial Court, it necessarily recognized that Defendant, as a corporate director of Peace Foods had defined fiduciary obligations to Peace Foods under NY BCL § 717(a). Furthermore, the Trial Court had to find that Defendant breached his fiduciary duties in the manner contemplated by NY BCL§ 720(a)(1)(A) and/or (B). The Trial Court's decisions directing Defendant to account and imposing the surcharges for misappropriated attorney's fees and missing revenue are based upon findings of fact and conclusions of law that Defendant misappropriated and failed to account for Peace Food's funds while Defendant acted in his fiduciary capacity as a corporate director. These findings of fact upon which the Trial Court based its decision are also subject to issue preclusion in this action.

Having established that the Trial Court determined that Defendant misappropriated and failed to account for Peace Food's funds while acting in a fiduciary capacity, the question becomes whether these determinations are decisive in this action. Since these findings are required for a determination of nondischargeability under Code § 523(a)(4), they are decisive in this action. Thus, the issues to be precluded here were both determined in the prior action and decisive in this action.

    b. *Full and Fair Opportunity to Litigate*

The Defendant had a full and fair opportunity to litigate the issues to be precluded here. New York's highest court provides guidance as to the factors a court may consider when determining whether a defendant was afforded a full and fair opportunity to litigate an issue in a prior action. These factors are: (i) the nature of the prior forum; (ii) the importance of the claim in the prior action; (iii) defendant's incentive and initiative to litigate; (iv) the actual extent of the prior litigation; (v) the competence and expertise of counsel; (vi) the availability of new

evidence; (vii) the differences in the applicable law; and (viii) the foreseeability of future litigation. *Ryan v. N.Y. Tel. Co.*, 478 N.Y.S.2d 823, 827 (1984) citing *Gilberg v. Barbieri*, 441 N.Y.S.2d 49, 51 (1981); *Schwartz v. Pub. Adm'r of Cnty. of Bronx*, 298 N.Y.S.2d 955, 961 (1969). A party opposing preclusion bears the burden of establishing that he did not have a full and fair opportunity to litigate the issue in the prior action. *In re Cohen*, 92 B.R. 54, 65 (Bankr. S.D.N.Y. 1988).

Where a defendant fails to establish that he did not have a full and fair opportunity to litigate an issue in a prior action based upon any of the foregoing relevant factors, the defendant fails to meet his burden of proof and issue preclusion may apply. Thus, unless Defendant establishes the absence of a full and fair opportunity to litigate whether he (i) as a corporate director of Peace Foods had defined fiduciary obligations to Peace Foods under NY BCL § 717(a), (ii) breached his fiduciary duties in the manner contemplated by NY BCL § 720(a)(1)(A) and/or (B), or (iii) misappropriated and failed to account for corporate funds while acting in his fiduciary capacity as a corporate director, then Defendant will be found to have had a full and fair opportunity to litigate these issues.

Defendant has not established that he did not have a full and fair opportunity to litigate these issues. In fact, Defendant has raised no argument in this regard. Additionally, the court notes that the Trial Court litigation spanned a five-year period during which two separate, multiple-day trials were conducted. Following those trials, Defendant appealed the Decision. As expressly noted by the Appellate Division, the Defendant did not in his appeal "dispute that [he] owed the corporation a fiduciary duty and that he should be surcharged for the inaccuracies in his accounting," he simply challenged that he was "liable for unaccounted revenue in the amount of

14

$234,581.46." Additionally, Defendant did not appeal the surcharge relative to his misappropriation of corporate funds to pay his personal attorney's fees. Thus, Defendant has not carried his burden of establishing that he did not have a full and fair opportunity to litigate whether he (i) had defined fiduciary obligations to Peace Foods as a corporate director of Peace Foods under NY BCL § 717(a), (ii) breached his fiduciary duties in the manner contemplated by § 720(a)(1)(A) and/or (B), or (iii) misappropriated and failed to account for corporate funds while acting in his fiduciary capacity as a corporate director. Thus, this court finds that Defendant had a full and fair opportunity to litigate these issues before the Trial Court. Because these issues were determined in the prior action and are decisive in this action and because Defendant had a full and fair opportunity to litigate these issues, issue preclusion applies in this action to establish that Defendant misappropriated and failed to account for Peace Foods' funds while acting in his fiduciary capacity. As such, the parties are precluded from relitigating the foregoing issues before this court.[13]

Because Defendant was a fiduciary and issue preclusion establishes that Defendant misappropriated and failed to account for Peace Food's funds while acting in a fiduciary capacity, there is no genuine dispute as to any material fact and Plaintiff is entitled to partial summary judgment as a matter of law with respect to the first two elements of Plaintiff's Code § 523(a)(4) claim. As such, for the reasons discussed herein, the court grants partial summary judgment to Plaintiff with respect to the first two elements of Plaintiff's claim and denies

---

[13] The court notes also that the legal standard applicable to Plaintiff's state law NY BCL § 720 claim is identical to the legal standard applicable to Plaintiff's § 523(a)(4) claim. "In a civil suit, the party having the burden of persuasion must establish the propositions essential to his cause by a preponderance of the evidence." *Jarrett v. Madifari*, 67 A.D.2d 396, 404 (N.Y. App. Div. 1st Dep't 1979).

Defendant's cross-motion.

### SCIENTER

In *Hyman*, the Second Circuit held "that defalcation under § 523(a)(4) requires a showing of conscious misbehavior or extreme recklessness-a showing akin to the showing required for scienter in the securities law context." *In re Hyman*, 502 F.3d at 68. The *Hyman* court explained its holding by stating that:

> [b]y requiring the courts to make appropriate findings of conscious misbehavior or recklessness in the course of dischargeability litigation, the standard we adopt today insures that the harsh sanction of non-dischargeability is reserved for those who exhibit "some portion of misconduct." *Herbst*, 93 F.2d at 512. The standard does not reach fiduciaries who may have failed to account for funds or property for which they were responsible only as a consequence of negligence, inadvertence or similar conduct not shown to be sufficiently culpable. This standard, we believe, also has the virtue of ease of application since the courts and litigants have reference to a robust body of securities law examining what these terms mean.

*In re Hyman*, 502 F.3d at 68-69. To establish conscious misbehavior or extreme recklessness, "in the bankruptcy context, a plaintiff must demonstrate that the defendant had actual knowledge of the fiduciary duty that was breached." *E. Armata, Inc. v. Parra (In re Parra)*, 412 B.R. 99, 106 (Bankr. E.D.N.Y. 2009); *see also, Econ. Dev. Growth Enters. Corp. v. McDerrmott (In re McDermott)*, 434 B.R. 271 (Bankr. N.D.N.Y. 2010). Here, Plaintiff alleges that Defendant had actual knowledge of the fiduciary duty that was breached. In support of this argument, Plaintiff cites to two corporate resolutions, one dated January 15, 2004, the other dated February 16, 2004, included in the record before this court as Crossmore Aff. Exs. H and I. However, Defendant denies such knowledge. Although the Trial Court received into evidence the two

corporate resolutions, it distanced itself from them in its Decision by reciting that they lacked a proper foundation and that it did not rely on the corporate resolutions in making its Decision. Furthermore, as Plaintiff concedes, the Trial Court made no direct finding of Defendant's misbehavior or recklessness.[14] Plaintiff nevertheless argues that the court through application of issue preclusion has facts from which the court may infer Defendant's apparent knowledge and state of mind. The court does not agree.

In the context of a summary judgment motion, it is inappropriate to infer a defendant's subjective state of mind where it is at least equally probable that defendant's breach was the consequence of negligence, inadvertence or similar conduct not shown to be sufficiently culpable. *See Deere & Co. v. Contella (In re Contella),* 166 B.R. 26 (Bankr. W.D.N.Y. 1994). In *Deere,* a creditor brought a motion for summary judgment on its § 523(a)(6) nondischargeability action. The action alleged that defendant acted willfully and maliciously when he sold creditor's collateral and kept the proceeds. The creditor urged the bankruptcy court to infer willfulness and malice from defendant's wrongful conversion of the collateral, without evidence of debtor's specific intent to injure the creditor. The bankruptcy court explained that an inference arises when there exists a basis to conclude that the existence of one fact "indicates and supports" the occurrence of another fact. *In re* Deere, 166 B.R. at 29. It also recognized that inferences are permissive and not mandatory by nature. *Id.* at 30. The bankruptcy court reasoned that drawing such an inference was "inappropriate, because conversion, even if wrongful, provides no greater indication of malice and willfulness as opposed to an absence of these

---

[14]The Trial Court was not required to determine the Defendant's state of mind to find he breached his fiduciary duty imposed by NY BCL § 717.

17

factors." The bankruptcy court held that "[n]o inference can be drawn in the absence of sufficient probability" and denied creditor's motion. *In re Deere*, 166 B.R. at 29.

Here, even if the court could apply issue preclusion to facts found in the prior action, the court finds it inappropriate to infer from such facts that Defendant had actual knowledge of his fiduciary duty to Peace Foods. This court, guided by the *Hyman* standard, and ever mindful that any doubts concerning the Defendant's state of mind must be resolved in Defendant's favor, finds that Defendant's knowledge of his fiduciary duty has not been established as a matter of law. Because (i) Defendant denies that he knew that he had a fiduciary duty, (ii) the Trial Court made no direct finding of Defendant's conscious misbehavior or recklessness, and (iii) it would be inappropriate for the court to infer Defendant's state of mind, the court finds no basis on the present record to find that Defendant had actual knowledge of his fiduciary duty. As such, the court cannot find as a matter of law under Code § 523(a)(4) that Defendant acted with conscious misbehavior or extreme recklessness when Defendant misappropriated and failed to account for corporate funds.[15]

The court notes that Defendant baldly denies having acted with conscious misbehavior or extreme recklessness. This assertion, at best, establishes that there exists a genuine issue of disputed material fact and that summary judgment is inappropriate on Plaintiff's motion and Defendant's cross-motion. See, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986

---

[15] Plaintiff argues that Defendant's breach of his duty of loyalty creates a presumption against Defendant's "bona fides." A presumption by definition is a "legal inference or assumption that a fact exists, based on the known or proven existence of some other fact or group of facts." *Black's Law Dictionary* 1223 (9th Ed. 2009). As previously discussed, the court declines to make such inferences as to Defendant's state of mind.

18

## CONCLUSION

For the foregoing reasons, the court grants partial summary judgment and concludes as a matter of law that Plaintiff has met his burden of establishing that Defendant (i) as a corporate director of Peace Foods had defined fiduciary obligations to Peace Foods under NY BCL § 717(a); (ii) breached his fiduciary duties in the manner contemplated by NY BCL § 720(a)(1)(A) and/or (B); and (iii) misappropriated and failed to account for corporate funds while acting in his fiduciary capacity as a corporate director.

Trial of this matter shall proceed limited to proof relevant and material to the issue as to whether Defendant had the requisite *scienter* to support a claim under Code § 523(a)(4). **A telephonic pretrial conference** is hereby **scheduled for June 12, 2012 at 3:30 P.M.** in order to ascertain the parties' availability for a trial date, with the court to initiate the call

So ordered.

Dated: May 23, 2012
      Syracuse, New York

Margaret Cangilos-Ruiz
United States Bankruptcy Judge